**UNITED STATES of America,
Appellant,**

v.

**Susan ROSENBERG, et al., Appellees.**

**Nos. 89–3070 to 89–3072.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 8, 1989.

Decided Nov. 3, 1989.

Henry S. Hoberman, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher and Margaret Ellen, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellant.

Rosemary Herbert, with whom James W. Klein was on the brief, for appellee in No. 89–3072.

Mary K. O'Melveny (appointed by this court), with whom Russell F. Canan, Washington, D.C., (appointed by this court), was on the joint brief for appellees in Nos. 89–3070 and 89–3071.

Before MIKVA, EDWARDS and WILLIAMS, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

Concurring opinion filed by Circuit Judge STEPHEN F. WILLIAMS.

Opinion dissenting in part and concurring in part filed by Circuit Judge HARRY T. EDWARDS.

MIKVA, Circuit Judge:

The appellees in this case were convicted in previous trials of conspiracy to possess unregistered firearms, explosives, and false identification. Subsequently, they were indicted on charges that they aided and abetted in the bombing of several Washington buildings during 1983 and 1984. The district court determined that the double jeopardy clause of the fifth amendment barred the subsequent prosecution of the appellees because the government planned to establish the appellees' liability for the bombings by using the same actual evidence that the government had used to convict the appellees of conspiracy in their earlier trials. Because we find no support for the use of a "same actual evidence" test in assessing whether successive prosecutions violate the double jeopardy clause, we reverse and remand. We note, however, that under established double jeopardy guidelines the government would be precluded from prosecuting the appellees for the substantive bombings charged if the sole theory of prosecution is vicarious liability under *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946).

## I. BACKGROUND

### A. *The Previous Trials*

Appellees Blunk and Rosenberg were arrested in Cherry Hill, New Jersey on November 29, 1984, following an investigation that culminated in the police observing Blunk and Rosenberg unload a large quantity of explosives from a U–Haul trailer into a rented public storage area. After further investigation, the government obtained indictments against Blunk and Rosenberg. After a trial in the District Court for the District of New Jersey, they were convicted on nine counts of conspiracy to possess unregistered firearms, explosives, and false identification documents, as well as several substantive counts related to the overt acts charged in the conspiracy. Rosenberg and Blunk were sentenced to 58 years in prison.

Appellee Berkman was arrested on May 23, 1985 while driving toward Doylestown, Pennsylvania. At the time of Berkman's arrest, FBI agents searched Berkman's car and found firearms, false identification documents, and explosives. Berkman was subsequently indicted, tried, and convicted in the District Court for the Eastern District of Pennsylvania for conspiracy to possess—and substantive possession of—the firearms, explosives, and false identification papers. Berkman was sentenced to ten years in prison and five years probation.

B. *The District of Columbia Indictments*

The appellees were indicted in the District Court for the District of Columbia on four counts of bombing, during 1983 and 1984, the United States Capitol, the National War College Building at Fort McNair, the Computer Center at the Washington Navy Yard, and the Officer's Club at the Navy Yard (the "Washington bombings") in violation of 18 U.S.C. §§ 844(f), 2. The appellees were also listed as unindicted co-conspirators in the conspiracy to carry out the foregoing bombings in violation of 18 U.S.C. § 371. Because the government apparently has little evidence linking the three appellees directly to the bombings, it had planned to establish the appellees' guilt of the substantive bombing charges on a theory of vicarious liability, asking the jury to infer the appellees' guilt from their involvement in the conspiracy for which they remain unindicted. *See Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). The government did not seek an indictment for conspiracy to bomb the aforementioned buildings in this case because the appellees had already been convicted of the same conspiracy in their earlier trials. Though · the conspiracy counts in the earlier trials alleged the criminal objects of the conspiracy as possession of unregistered firearms, explosives, and false identification documents, the mere substitution of different criminal objects (the bombing of the buildings) does not change the conspiracy into a separate offense distinct from the one previously tried. Such a "pile on" use of conspiracy doctrine has long been precluded under federal law. *See Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942).

C. *The District Court's Decision*

On April 11, 1989, Judge Harold H. Greene dismissed the District of Columbia indictments against the appellees on double jeopardy grounds. In his opinion, the district judge noted that the formal elements of the conspiracies of which the appellees had been convicted did not include the acts of bombing for which they were indicted in the District of Columbia District Court.

Therefore, under his reading of the double jeopardy test of *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), appellees' double jeopardy argument would fail, because the statutory definitions of the two offenses indicate that each involves proof of an element that the other does not. Nonetheless, Judge Greene rejected the government's argument that the *Blockburger* test was the definitive inquiry in this case.

The district court determined that the facts of this case demanded an inquiry beyond the *Blockburger* "elements test" to see if the government's prosecution would be a double jeopardy violation. Under its reading of double jeopardy caselaw, the district court concluded that the government was barred from prosecuting the appellees for the substantive bombings charged in the District of Columbia indictments because the government planned to use the "same actual evidence" to prosecute the appellees in the District of Columbia that it had used to obtain the conspiracy convictions in the appellees' earlier trials. The district court reasoned that the same factors that render successive prosecutions violative of the double jeopardy clause in lesser-included offense cases obtain in this case:

> In both instances (1) the evidence in the first trial is the same as that used in the second trial, (2) the evidence is necessarily identical, for at the second trial the offenses could not be proved without use of that evidence, and (3) thus one trial involves relitigation of the other trial in full.

*United States v. Whitehorn,* 710 F.Supp. 803, 848 (D.D.C.1989). The court acknowledged that few cases have applied what it termed the "same actual evidence" test outside of the lesser-included offense context because of the unique factual and procedural circumstances that must converge in order for the test appropriately to be applied:

> This case ... is one of those presumably rare cases in which the government prosecutes a defendant for conspiracy in successive trials and is forced to reprove

the conspiracy in order to establish the defendant's guilt for aiding and abetting the substantive offense.

*Id.* at 850. The court specifically noted that there would be no double jeopardy problem if the government had independent, direct evidence of the appellees' guilt of the substantive offenses charged in the second prosecution. *Id.* at 850 n. 161. Here, however, the court found that the government would use all of the evidence in this prosecution that it had used to prosecute the appellees in their earlier trials. The judge determined that the small amount of "new evidence" the government planned to introduce to link the appellees to the Washington bombings was either cumulative of evidence used at the earlier trials or failed to tie the appellees directly to the bombings.

## II. DOUBLE JEOPARDY AND SUCCESSIVE PROSECUTIONS

■ After reviewing all of the cases cited by the district court in support of its "same actual evidence" test, we conclude that despite some admittedly ambiguous language in these opinions, neither the Supreme Court nor this circuit has ever endorsed a double jeopardy test that looks to the actual evidence presented in successive prosecutions. We likewise conclude that the district court has misread the opinions of our sister circuits addressing double jeopardy in the context of successive prosecutions. In any case, to the extent that any other circuits have suggested that the application of a "same actual evidence" test is appropriate, we decline to follow them.

### A. *The Supreme Court*

The Supreme Court has noted repeatedly that the double jeopardy clause has three functions: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). The

case *sub judice* concerns the double jeopardy clause's protection against successive prosecutions for the same offense. The protection against successive prosecution is rooted in the "constitutional policy of finality for the defendant's benefit." *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971). The Court in *Brown* explained that this policy protects the accused from repeated litigation of facts underlying a prior acquittal, and from the prosecutor's desire to secure additional punishment where the government is dissatisfied with the result of the first trial. 432 U.S. at 165–66, 97 S.Ct. at 2225 (citations omitted).

The Court has rejected claims that successive prosecutions are jeopardy-barred because of a substantial overlap in the evidence introduced to prove both offenses. In *Gavieres v. United States,* 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), the Supreme Court permitted successive prosecutions despite a virtual, if not complete, identity of evidence in proving the two offenses. *See also Jones v. Thomas,* — U.S. ——, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989).

Instead of an actual evidence test, the Court has applied the *Blockburger* test in successive prosecution cases. In *Brown,* the Court explained that "[i]f two offenses are the same under [*Blockburger* ] for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions." 432 U.S. at 166, 97 S.Ct. at 2225–26. The Court went on, however, to note that there are some circumstances in which two offenses might pass the *Blockburger* test but successive prosecutions would be barred because "the second prosecution requires the relitigation of factual issues already resolved by the first." *Id.* at 166–67 n. 6, 97 S.Ct. at 2226 n. 6. As examples, the Court cited its decisions in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (principles of collateral estoppel in double jeopardy clause barred prosecution of the accused for robbing victims at a poker game where the accused had been acquitted at an earlier trial of robbing one of the participants

at the same game) and *In re Nielsen,* 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) (conviction of cohabitation with two wives found to bar subsequent trial on charge of adultery with one of the wives). The Court stated that the offenses charged in each of these cases would have satisfied the *Blockburger* test for independent crimes as each required proof of a fact that the other did not, but that the Court in each case nonetheless found that the second trial would violate the protections of the double jeopardy clause. *Brown,* 432 U.S. at 167 n. 6, 97 S.Ct. at 2226 n. 6.

The Court's decision in *Ashe* is inapposite to the instant case, because *Ashe* addressed successive prosecutions following acquittal. In *Nielsen,* even though the statutory definitions of cohabitation and adultery each contained an element that the other did not, the Supreme Court looked to the intent behind the statute prohibiting cohabitation and construed it to include all of the elements necessary to establish adultery. *Nielsen,* 131 U.S. at 189, 9 S.Ct. at 676. Thus, one might read *Nielsen* as merely one in the line of cases which hold that the double jeopardy clause prohibits subsequent prosecution for a lesser-included offense. In any case, *Nielsen* does not stand for the proposition that a reviewing court should consider the "actual evidence" presented to determine whether two offenses are sufficiently distinct to merit separate trials. The Court's decision was based upon its construction of the cohabitation statute. It determined that adultery was a lesser-included offense of cohabitation because, the Court reasoned, no one could be convicted for cohabitation without the prosecutor also proving all of the elements of adultery. The test that the *Nielsen* Court conducted was asking, in the abstract, what evidence would be needed for *anyone* to be convicted of cohabitation; it did not ask whether the actual evidence presented at Nielsen's first trial would suffice to convict him in the second. Thus, to the extent that the district court relied upon *Brown* and derivatively upon *Nielsen* to support its "same actual evidence" test, it erred.

Some of the Court's language in *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), might be read to support the district court's decision. In *Vitale,* a car driven by the defendant struck two small children, both of whom died within two days of the incident. The defendant was tried and convicted of failing to reduce speed in order to avoid an accident in violation of an Illinois traffic law. After the first trial, the defendant was charged with two counts of involuntary manslaughter based upon the same conduct. The Supreme Court of Illinois held that the second prosecution was barred by the double jeopardy clause because the charge of failing to reduce speed was a lesser-included offense of involuntary manslaughter. *Id.* at 414, 100 S.Ct. at 2264. The United States Supreme Court vacated and remanded, holding that "[i]f manslaughter by automobile does not always entail proof of a failure to slow, then the two offenses are not the 'same' under the *Blockburger* test." *Id.* at 419, 100 S.Ct. at 2266. Despite this apparently clear reliance upon *Blockburger,* however, the Court continued:

> In any event, it may be that to sustain its manslaughter case the State may find it necessary to prove a failure to slow or to rely on conduct necessarily involving such failure; it may concede as much prior to trial. In that case, because Vitale has already been convicted for conduct that is a necessary element of the more serious crime for which he has been charged, his claim of double jeopardy would be substantial under *Brown* and our later decision in *Harris v. Oklahoma,* 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

*Vitale,* 447 U.S. at 420, 100 S.Ct. at 2267. This language might be read to endorse an inquiry into the actual evidence presented at trial like that conducted by the district court. The reference is at best ambiguous, however, and in the context of the entire opinion it would be inconsistent to conclude that the Court has advocated some kind of "same actual evidence" test for successive prosecutions. In the only subsequent Supreme Court comment on this language from *Vitale,* Justice Rehnquist rejected

reading the above-quoted language to indicate that an actual-evidence double jeopardy test should be applied to successive prosecutions. He opined that in spite of the ambiguous language quoted above, he was

> reasonably sure that the Court did not intend to transmute the traditional double jeopardy analysis from an either "up or down" inquiry based on the evidence required to prove the statutory elements of a crime into a "substantial claim" inquiry based upon the evidence that the State introduced at trial.

*Thigpen v. Roberts*, 468 U.S. 27, 35–39, 104 S.Ct. 2916, 2921–23, 82 L.Ed.2d 23 (1984) (Rehnquist, J., dissenting). We can be at least as "reasonably sure" as the Chief Justice that the Supreme Court did not intend *Vitale* to signal an entirely new standard of double jeopardy jurisprudence.

## B. *D.C. Circuit*

In *United States v. Black*, 759 F.2d 71 (D.C.Cir.1985), this court refused to grant a stay of a district court order denying the defendant's motion to dismiss certain counts in the indictment against him on double jeopardy grounds. In *Black*, the defendant had been convicted in a previous trial of conspiracy to distribute controlled substances and violation of the Travel Act. He asserted that evidence to be used at his second trial to prove certain of the charges and several of the overt acts necessary to demonstrate conspiracy would be substantially the same as that used to obtain the convictions in the first trial. The defendant asked the court to focus on the actual evidence presented at the two trials, urging that the *Blockburger* "elements" test was inapplicable to successive prosecutions. The district court rejected the defendant's claim. *United States v. Black*, 605 F.Supp. 1027, 1028 (D.D.C.1985). This court approved the district court's reasoning in *Black*, noting that

> [a]lthough some authority exists for the proposition that, under certain exceptional circumstances, evidence adduced at an earlier trial which is reintroduced at a subsequent trial may give rise to double jeopardy claims, *see, e.g., In re Nielsen,*

131 U.S. 176 [, 9 S.Ct. 672, 33 L.Ed. 118] (1889); *Jordan v. Commonwealth of Virginia,* 653 F.2d 870 (4th Cir.1980); *United States v. Sabella,* 272 F.2d 206 (2d Cir.1959), these circumstances are not present here and there is no general prohibition against evidence introduced at one criminal trial being introduced against the same defendant at a subsequent trial for a different offense.

759 F.2d at 73.

We have determined, *supra,* that *Nielsen* does not support a "same actual evidence" test. We also conclude that neither *Sabella* nor *Jordan* supports the district court's close scrutiny of the actual evidence used to convict the appellees in their previous trials to determine if the double jeopardy clause bars their subsequent prosecution for the Washington bombings.

In *Sabella,* the defendants were convicted of violating 26 U.S.C. § 4705 by selling heroin without a written order. They were subsequently convicted of violating 21 U.S.C. §§ 173, 174 by selling illegally imported heroin. 272 F.2d at 207–08. The Second Circuit (Friendly, J.) held that the second prosecution was a violation of the double jeopardy clause, because the evidence required to convict the defendants on one of the indictments was sufficient to support a conviction on the other. *Id.* at 211. By proving the single sale of heroin, the government necessarily established a prima facie case under both indictments. *Id.* While he rejected applying the *Blockburger* "elements" test to the facts of *Sabella* because the case dealt with successive prosecutions instead of a multiple count indictment, Judge Friendly did not analyze the *actual* evidence presented (or to be presented) in each prosecution. Rather, he examined the relevant statutes in the abstract and, under a *Nielsen* analysis, determined that neither offense required proof of a significant fact not required to sustain the other. *Id.*

In *Jordan,* the defendant was convicted of the misdemeanor offense of obtaining a drug by presenting a forged prescription. In a second trial, the defendant was convicted of possessing a controlled substance.

Both convictions arose from the same conduct. 653 F.2d at 871–72. The Fourth Circuit began its analysis of the double jeopardy implications of the second prosecution by noting that "multiple charges that satisfy the *Blockburger* test so that they may properly be joined in a single prosecution may nevertheless violate double jeopardy if prosecuted successively." *Id.* at 873. The court determined that "the evidence *necessarily* used by the government in prosecuting the earlier misdemeanor charge would totally have sufficed to sustain the later felony conviction." *Id.* at 874 (emphasis added). Because the government was compelled to prove that the defendant had *obtained* the specific drug (defined as a controlled substance under the felony statute) in order to prove the misdemeanor charge, the Commonwealth had already proven the necessary elements of *possession* of a *controlled substance* necessary for conviction under the felony statute. *Id.* at 874–75. The court did not refer to the actual evidence presented at either trial. Instead, it analyzed abstractly what any prosecutor would have to demonstrate in order to convict under the relevant statutes.

The foregoing review shows that the Supreme Court has consistently held impermissible the prosecution of an individual in successive trials for two offenses where the evidence required to prove the elements of one offense necessarily suffices to prove the elements of the other. Often, merely examining the statutes defining the two offenses reveals that the elements of one offense are facially contained within the other. Occasionally, however, courts have determined that despite the facial disparity of two statutes, proving the elements of one offense necessarily establishes the elements of the other. *See Nielsen,* 131 U.S. at 189, 9 S.Ct. at 676; *Jordan,* 653 F.2d at 871–72; *Sabella,* 272 F.2d at 211. In none of these cases did the courts stray from an abstract examination of what must be proved in order to establish the elements of the offenses in question. Therefore, we reject the district court's "same actual evidence" test as an unsupported departure from established double jeopardy jurisprudence.

## C. Pinkerton *Liability*

■ In rejecting the "same actual evidence" test, we do not disparage the district court's efforts to avoid double jeopardy in the case *sub judice.* If the government prosecutes the appellees for the substantive bombing offenses solely on a *Pinkerton* theory of liability, with no evidence of the appellees' guilt apart from their involvement in the conspiracy to bomb, then the double jeopardy clause precludes the subsequent prosecution. In reaching this conclusion, we do not compare the actual evidence that the government presented in the appellees' previous conspiracy trials with the evidence it plans to offer in the substantive bombing trial. Instead, consistent with the double jeopardy guidelines outlined above, we examine *in the abstract* the evidence required to establish the elements of each offense. The jeopardy bar arises because despite the facial disparity of the elements required to establish the appellees' guilt of conspiracy to possess unregistered firearms, explosives, etc. and the elements necessary to prove liability for the substantive bombings, a *Pinkerton* theory of liability for the bombings necessitates re-proving each element of the conspiracy of which the appellees stand convicted.

In order to establish the appellees' vicarious liability for the Washington bombings under *Pinkerton,* the government must prove: (1) that the appellees were members of a conspiracy which had as one of its objects the Washington bombings; and (2) that some member of the conspiracy other than the appellees actually carried out the Washington bombings. *See Pinkerton,* 328 U.S. at 647, 66 S.Ct. at 1184. The government has acknowledged that the conspiracy to possess unregistered firearms, explosives, etc.—of which the appellees have been convicted in their earlier trials—is indivisible from the conspiracy to bomb, a necessary element of the substantive bombing offense under *Pinkerton.* The two conspiracies are the same under the rule of *Braverman v. United States,*

317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942). Thus, the conspiracy of which the appellees have been convicted in their earlier trials is functionally a lesser-included offense of the substantive bombing offense, *see United States v. Larkin,* 605 F.2d 1360, 1367 (5th Cir.1979), *withdrawn in part,* 611 F.2d 585 (5th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980), and the subsequent prosecution is barred.

Our conclusion is in accord with the Supreme Court's decision in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). *Garrett* could be read to limit the scope of *Brown v. Ohio,* in which the Court stated clearly that the double jeopardy clause bars a prosecution where the defendant has already been convicted of a lesser-included offense of the crime charged in the second trial. *See* 432 U.S. at 169, 97 S.Ct. at 2227. In *Garrett,* the Court expressed "serious doubts" as to whether a drug importation conviction, which the judge at a second trial instructed the jury that it might consider as one of the three predicate offenses necessary to establish a Continuing Criminal Enterprise ("CCE"), constituted a lesser-included offense within the CCE charge. 471 U.S. at 787, 105 S.Ct. at 2415–16. The Court distinguished the two charges at issue in *Garrett* from traditional lesser-included offense cases in which both offenses arise from a single course of conduct. The Court stressed that even after Garrett had committed the first predicate offense, "it could not be said with any certainty that he would necessarily go ahead and commit the other violations required to render him liable on a CCE charge." *Id.* at 788–89, 105 S.Ct. at 2416. By contrast, to establish *Pinkerton* liability in the case *sub judice,* the single action by the appellees that the government must prove is their involvement in the conspiracy to carry out the Washington bombings. The government has acknowledged that under the *Braverman* bar to subdividing a conspiracy this conspiracy is inseparable from the conspiracy for which the appellees were charged and convicted in their earlier trials. Thus, by conspiring to possess unregistered firearms, explosives, and false identification papers, the appellees had done everything *they* had to do in order for the government to charge them with vicarious liability for the Washington bombings. It is hard to imagine a more *singular* course of conduct.

We emphasize that the government is not precluded from prosecuting the appellees for the Washington bombings on a theory of liability of aiding and abetting or on a theory of direct participation in the bombing. Nor is it precluded from using any evidence introduced at earlier trials. The existence of the conspiracy may even be used as circumstantial evidence that the appellees aided and abetted or participated in the bombings. (If the government does rely on the conspiracy as circumstantial evidence, the trial judge may, in his discretion, give an anti-*Pinkerton* charge, making clear to the jury that they cannot impose liability based solely on the defendants' participation in the conspiracy.) The government is disabled only from relying on a theory of liability that requires the jury (or judge sitting without a jury) to find as a necessary ingredient the appellees' participation in the conspiracy for which they have already been convicted.

The dissent mischaracterizes the breadth and focus of our holding. We do not challenge the proposition that a conspiracy and the object of that conspiracy may be prosecuted separately in separate trials. Indeed, we have stated directly that the government may prosecute the appellees in the case *sub judice* for the Washington bombings even though they have been convicted in earlier trials of a conspiracy which is indivisible from the conspiracy to bomb. The litany of caselaw that the dissent offers to prove this unobjectionable point is neither new nor directed at the narrow issue we are forced to confront in this case. We hold simply that the government may not, consistent with the Supreme Court's teachings regarding the prosecution of greater and lesser-included offenses in successive trials, prosecute the appellees for the Washington bombings on a theory of liability that *necessarily* requires the

government to re-prove the conspiracy of which the appellees have been convicted.

The dissent purports to refute our conclusion by reference to *Pinkerton,* claiming that *"Pinkerton* itself is dispositive of the issue at hand." Dis.Op. at 1426. Yet, a careful reading of *Pinkerton* reveals that it did not—and could not—have properly addressed the question posed by this case. *Pinkerton* involved a single prosecution. Therefore, the unique problem caused by successive prosecutions of greater and lesser-included offenses was not available for the *Pinkerton* Court's consideration. Moving beyond *Pinkerton* to the successive prosecution context, we are forced to confront the Supreme Court's teaching in *Brown* that the successive prosecution of greater and lesser-included offenses is prohibited. 432 U.S. at 169, 97 S.Ct. at 2227. We conclude that prosecuting the appellees under a *Pinkerton* theory of vicarious liability renders the conspiracy of which they have been convicted a lesser-included offense of the substantive bombing charged. A second prosecution on this theory is jeopardy-barred.

■ As noted above, much of the caselaw that the dissent cites supports the proposition that a defendant may be prosecuted for a conspiracy and the object of that conspiracy in separate trials. *See United States v. Bayer,* 331 U.S. 532, 541–42, 67 S.Ct. 1394, 1398–99, 91 L.Ed. 1654 (1947); *United States v. McCullah,* 745 F.2d 350, 355 (6th Cir.1984); *United States v. Kalish,* 734 F.2d 194, 197–98 (5th Cir. 1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 321 (1985); *United States v. Brooklier,* 637 F.2d 620, 624 (9th Cir. 1980), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 815 (1981); *United States v. Cruz,* 568 F.2d 781, 782–84 (1st Cir.1978), *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979). We do not object to this conclusion. To the extent that *United States v. Marden,* 872 F.2d 123, 125 (5th Cir.1989), supports the proposition that a defendant may be convicted of a conspiracy and then prosecuted separately for a substantive offense based *solely* upon proof of their involvement in that conspiracy, we

decline to follow it. It is unclear whether the *Marden* court considered the bar to prosecuting greater and lesser-included offenses in succession, and, despite our reluctance to create a circuit split on this issue, our duty to abide by the Supreme Court's teaching compels our decision. In *United States v. Cerone,* 830 F.2d 938, 944 (8th Cir.1987), *cert. denied,* —— U.S. ——, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988), the Eighth Circuit dealt with a single prosecution, and its holding is therefore inapposite to the issue we are confronting. Likewise, in *United States v. Manzella,* 791 F.2d 1263, 1270 (7th Cir.1986), the Seventh Circuit reached the unsurprising conclusion that there was no jeopardy bar to re-trying a defendant based upon vicarious liability where the original conviction on this charge was vacated because of an error in jury instructions. This procedural posture renders *Manzella* indistinguishable from a single prosecution, and it is thus inapposite.

The dissent dismisses vicarious liability under *Pinkerton* as "a *theory of proof* —nothing more and nothing less." Dis.Op. at 1424. This is disturbing, as is the dissent's conclusion that the prosecution's theory of liability does not meaningfully transform the elements of the offense from the perspective of double jeopardy. *See id.* at 1424–1425. The simple fact is that if the prosecution proceeds on a theory of vicarious liability in this case the only actions by the appellees that the government must prove is that they were involved in the same conspiracy of which they have been convicted. This is radically different from establishing some affirmative link to the bombings, and while it may be permissible in a single prosecution, our cognizance of the values at stake in successive prosecutions for greater and lesser-included offenses leads us to find a subsequent prosecution on a vicarious liability theory violative of double jeopardy.

### D. *Exceptions to Double Jeopardy*

The government also claims an exception to whatever jeopardy bar might exist because it asserts that it was precluded from prosecuting the appellees in a single trial for the Washington bombings and the con-

spiracies of which they have been convicted.

With respect to appellee Dr. Berkman, the government asserts that venue for the Washington bombings did not lie in the Eastern District of Pennsylvania because, except as provided by statute or rule, the government must prosecute a case in the district where the crime was committed. The government asserts that none of the actions that Berkman carried out in the Eastern District of Pennsylvania were in furtherance of the bombings and, therefore, the government could not prosecute Berkman for the bombings in the Philadelphia trial. Without addressing the merits of this argument, we note simply that the government could have prosecuted Berkman for both the Washington bombings and the conspiracy charge in the District of Columbia. The Supreme Court has held that a conspiracy prosecution may be brought in any district in which some overt act in furtherance of the conspiracy was committed by any of the co-conspirators. *See Hyde v. United States*, 225 U.S. 347, 363–64, 32 S.Ct. 793, 800–01, 56 L.Ed. 1114 (1912). Because the government has conceded that the conspiracy of which Berkman was convicted in Philadelphia is not severable from the larger conspiracy to carry out the Washington bombings, it follows that acts in furtherance of the conspiracy were committed in Washington. Thus, the government could have brought both charges in Washington.

■ The government's argument with respect to Blunk and Rosenberg will require further inquiry by the district court on remand. The government contends that it could not have brought the substantive bombing charges against Blunk and Rosenberg in their earlier trial because the government did not possess essential evidence linking them to the Washington bombings until after they had been convicted and sentenced in New Jersey. The government thus asserts that it falls within a claimed "due diligence" exception to the double jeopardy clause alluded to in *Brown*, 432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7 ("An exception may exist where

the State is unable to proceed on the more serious charge at the outset because the additional facts necessary to sustain that charge have not occurred or have not been discovered despite the exercise of due diligence.") (citing *Diaz v. United States*, 223 U.S. 442, 448–49, 32 S.Ct. 250, 251, 56 L.Ed. 500 (1912)). On remand, the government must be given an opportunity to argue for the existence of this "due diligence" exception and to demonstrate that, despite the exercise of due diligence, it did not discover evidence linking the conspiracy to the Washington bombings until after Rosenberg and Blunk had been convicted in the New Jersey trial.

The government also argues that venue for the substantive bombing charges did not lie in the District of New Jersey for the same reasons that it did not lie in the Eastern District of Pennsylvania. We reject this argument for the same reasons we rejected it for appellee Berkman. As with Berkman, venue for Rosenberg and Blunk would have been proper in Washington for both the substantive bombing offenses and the conspiracy offense. The only difference is that the government might have lacked sufficient evidence to link Rosenberg and Blunk to the bombings at the time of the first trial. But that difference is only relevant to the due diligence exception issue. Venue is a wholly separate inquiry, and no venue barriers prevent the conspiracy and substantive bombing offense from being brought in a single prosecution.

### E. *Conclusion*

The constitutional guarantee against double jeopardy has never proven as easy to administer judicially as it sounds in abstract policy terms. All can agree that a defendant ought not to be doubly tried or doubly punished for the same offense. What separates permissible prosecutions from the proscribed turns on ephemeral distinctions that give rise to numerous and difficult parsings of the term "double jeopardy." We decline to add to the permutations by approving a "same actual evidence" test. But we and the government must adhere to the longstanding double

jeopardy proscription of successive prosecutions for lesser-included offenses.

We reverse and remand for proceedings consistent with this opinion.

STEPHEN F. WILLIAMS, Circuit Judge, concurring.

I concur in the opinion of the court but write separately to make clear why I believe the government cannot proceed on the theory established in *Pinkerton v. United States*, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), that every conspirator is liable for all substantive offenses committed pursuant to the conspiracy.

The Supreme Court stated the authoritative test for double jeopardy in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932):

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

As *each* charge (in order to survive a double jeopardy attack) must entail proof of a fact not needed for the other,[1] conviction of a lesser included offense bars prosecution for the greater, and vice versa. *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977); *Harris v. Oklahoma*, 433 U.S. 682, 97 S.Ct. 2912, 53 L.Ed.2d 1054 (1977).

The reference to the "require[d] proof of a fact" carries an ambiguity. Looked at in the raw, it might seem to bar successive prosecutions for two crimes if, because the defendant managed to compress his criminal conduct, witnesses could not intelligibly describe one without describing the other. This is clearly *not* what the Court has meant. Thus *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), allowed successive prosecutions for defendant's simultaneous commission of the (old-fashioned sounding) crimes of insulting a public official and of being drunk

or boisterous in a public place. See also *Jones v. Thomas*, —— U.S. ——, 109 S.Ct. 2522, 105 L.Ed.2d 322 (1989) (applying the same principle to substantially simultaneous murder and robbery).

Instead, a "fact" is "require[d]" to be proved if it is one the jury must find in order to convict. Cf. *Pryor v. Rose*, 724 F.2d 525, 529–30 (6th Cir.1984) (en banc) (examining jury charge to determine facts of which proof was required). Thus in *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980), the Court reviewed successive prosecutions arising out of Vitale's driving in an automobile accident that killed two small children. He was first convicted of careless failure to reduce speed. The state then sought to prosecute him for manslaughter. The Court considered three possibilities. One, Illinois law might allow the state to secure a conviction for manslaughter only by showing careless failure to slow; the second prosecution would be barred. Two, Illinois law might allow a manslaughter conviction on grounds other than failure to slow, and the state would be able to establish one of those alternatives; the second prosecution would be permissible. Three, Illinois law might allow a manslaughter conviction on grounds besides failure to slow, but the state "may find it necessary to prove a failure to slow"; it could not then secure a second conviction. 447 U.S. at 419–20, 100 S.Ct. at 2267.

The test could in some instances pose nice questions as to the level of generality at which the necessary "facts" are to be defined. In *Vitale*, for example, would there be no double jeopardy problem if under Illinois law the court could properly charge the carelessness component of manslaughter in generic terms rather than specifically requiring a finding of failure to slow? Happily, no such problem is posed by the present case, where, if the government proceeds on *Pinkerton's* theory of vicarious liability, the court must charge

---

1. I.e., the "set" of elements of each crime must contain an element not included in the set of   elements of the other.

the jury in precisely the terms that conspiracy law uses to define the prior offense.

Conviction on the *Pinkerton* theory would "require[ ] proof of a fact" required for the defendants' conspiracy convictions. (And, as we shall see, the conspiracy charges did not require proof of any legally relevant fact in addition to the ones needed for the substantive bombings.) A charge instructing the jury under *Pinkerton* shows how a defendant's membership in the conspiracy becomes part of the facts necessary for the substantive conviction:

> If you find that the defendant is guilty of conspiracy as charged in Count One, you may also find the defendant guilty of a substantive offense as charged in any other count of the indictment, provided that you find that the essential elements of that count as defined in these instructions have been established beyond reasonable doubt, and provided that you also find beyond reasonable doubt,
>
> First, that the offense defined in the substantive count was committed pursuant to the conspiracy, and
>
> Second, that the defendant was a member of the conspiracy at the time the substantive offense was committed.
>
> Under the conditions just defined a defendant may be found guilty of a substantive count even though he did not participate in the acts constituting the offense as defined in the substantive count. The reason for this is that a co-conspirator committing a substantive offense pursuant to a conspiracy is held to be the agent of the other co-conspirators.

*United States v. Zabic,* 745 F.2d 464, 474 (7th Cir.1984) (emphasis added).

As the charge demonstrates, the *Pinkerton* theory alters the necessary elements of the offense. Without the *Pinkerton* charge, the jury is told to impose liability only if it finds that the defendant "participate[d] in the acts constituting the of-

fense." With *Pinkerton,* the jury is expressly told that it need not make this finding. The elements of the offense are respecified as (1) the defendant's membership in the conspiracy, and (2) commission of the substantive offense by any member(s) acting pursuant to the conspiracy.

The first of those facts, of course, is the essential one needed for defendants' prior convictions for conspiracy (conceded by the government to have been the same conspiracy in both charges). As a result, the conspiracy conviction did not require "proof of a fact which [the present charge] does not," *unless* the overt act necessary for conspiracy conviction counts for *Blockburger* purposes.[2] But *Braverman v. United States,* 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23 (1942), tells us that it cannot do so. There the Court held that a conspiracy did not multiply as its objects multiplied, that a single agreement to commit several crimes supported only one conspiracy conviction. The Court stated that the defendants "collaborated in the illicit manufacture, transportation, and distribution of distilled spirits, involving the violations of statute mentioned in the several counts of the indictment." *Id.* at 50–51, 63 S.Ct. at 100. Thus it appears that overt acts were committed in violation of several (perhaps all) of the seven statutes that identified the seven purposes of the conspiracy. Yet the *Braverman* Court was unwilling to say that the proliferation of overt acts, one for each criminal purpose, would satisfy the *Blockburger* requirement that each charge "require proof of a fact which the other does not." An overt act, then, is not material for *Blockburger* purposes. This is hardly surprising, as the act need not itself be criminal, and may be quite trivial (however important it is to protect people from punishment for merely harbouring joint criminal intent). Thus, as the conspiracy convictions required proof of no material fact that is not essential for conviction of the bombings on the *Pinkerton* theory,

---

**2.** The Washington bombings were not charged as overt acts in the first trials. That overt acts *not* involving the Washington bombings were "necessary" for the first convictions was due, of course, to the government's not charging any overt act involving those bombings. Had it relied on such an overt act, the overlap in offenses would be indisputably fatal.

they are lesser included offenses under *Blockburger*.

The government contends that the second prosecution should be allowed since, in the abstract realm of the statute books, the elements of conspiracy and of the substantive offenses seem totally dissimilar. But that is not the *Blockburger* approach, which looks to the *facts* the government is required to establish in the real world. The government's position involves this curiosity: prosecution of the defendants under *Pinkerton* would be barred if the *Pinkerton* principle were explicitly codified in a statute. That it arises from judicial construction should make no difference.

Nothing in today's holding disables the government from introducing the defendants' participation in the conspiracy as tending to prove that they either directly participated in the substantive offenses or aided and abetted their commission. In the absence of a *Pinkerton* charge the agreement to conspire will not be a fact necessary for liability; any conviction will be consistent with *Blockburger*. See *Pereira v. United States*, 347 U.S. 1, 9–12, 74 S.Ct. 358, 363–65, 98 L.Ed. 435 (1954); *United States v. McCullah*, 745 F.2d 350, 355 (6th Cir.1984).

The strongest argument against our result might be a claim that it unravels *Pinkerton* itself. That decision upheld separate punishments both for conspiracy and for substantive offenses committed by other members of the conspiracy, even for the defendant whose guilt of the substantive offense was based solely on his membership in the conspiracy. Since the double jeopardy clause and the *Blockburger* test normally apply as much to successive prosecutions as to multiple punishments, today's decision might seem inconsistent with that result.

But despite the Court's general use of the same doctrine in both contexts, its function is quite different in the two. Because the legislature could always impose a long-

er sentence for any offense, the only question in cases of multiple sentences is the meaning of the criminal statutes. See *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225 ("Where consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense.") In that context *Blockburger* is only a presumption that can be overcome by clearly manifested legislative intent, as it was in *Missouri v. Hunter*, 459 U.S. 359, 368, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983).[3]

In contrast, the prohibition against successive prosecutions lies at the core of the double jeopardy clause. It arises, as Judge Friendly pointed out in *United States v. Sabella*, 272 F.2d 206, 211 (2nd Cir.1959), "from the ancient pleas of *autrefois acquit* and *autrefois convict*," pleas not available to a defendant merely asserting overlap in a multi-count indictment. And its consequences are different: it "serves 'a constitutional policy of finality for the defendant's benefit,'" *Brown*, 432 U.S. at 165, 97 S.Ct. at 2225, and protects him from "having to 'run the gantlet' a second time," *id.* at 166–67 n. 6, 97 S.Ct. at 2226 n. 6. Congress cannot change its effect by greater clarity as to intended punishments. See *Gore v. United States*, 357 U.S. 386, 392–93, 78 S.Ct. 1280, 1284–85, 2 L.Ed.2d 1405 (1958).

Second, *Pinkerton* itself never explained the aspect of the decision critical here—allowing multiple punishments both for conspiracy and a substantive crime where the defendant's liability for the second derives solely from his membership in the conspiracy. In so far as it discussed double jeopardy, it lumped together both the defendant who was active in the substantive offenses and the one who was not. As to the latter, of course, it went on to establish what we have referred to as the *Pinkerton*

---

**3.** Given the function of double jeopardy for multiple punishment cases, it is not clear why the Supreme Court need have any role in the matter for state cases, other than to correct state court decisions mistakenly applying the federal

clause, as it did in *Missouri v. Hunter*. Compare *id.* at 369–74, 103 S.Ct. at 679–82 (Marshall, J., dissenting) (asserting that the *Blockburger* test is of constitutional dimension even in multiple punishment cases).

theory—that he could be convicted for the substantive offense solely on the basis of his membership in the conspiracy. But it never addressed the peculiar double jeopardy issue raised by his dual punishment, namely the point that a finding of his membership in the conspiracy was a necessary element of his conviction for the substantive offense (and that his conspiracy conviction required no additional element other than proof of an overt act, which there was satisfied by the substantive offenses themselves). As we have seen, this makes the former a lesser-included offense within the latter, in violation of *Blockburger.* At least one court has noted both the difficulty of reconciling this aspect of *Pinkerton* with *Blockburger* and the *Pinkerton* Court's failure to address the issue. *United States v. Larkin,* 605 F.2d 1360, 1367 & n. 19 (5th Cir.1979), modified in part, 611 F.2d 585 (5th Cir.1980).

The *result* in *Pinkerton* forecloses a double jeopardy claim in the context of consecutive sentences. See *United States v. Cerone,* 830 F.2d 938, 945 (8th Cir.1987); *United States v. Wylie,* 625 F.2d 1371, 1382 n. 15 (9th Cir.1980) (dictum). In effect the outcome is an instance of a judicial construction overriding the *Blockburger* presumption (though oddly without an explanation). But that is not reason enough to extend *Pinkerton* to the case of successive prosecutions, where *Blockburger* itself should control as usual. While one circuit court has extended *Pinkerton* to successive prosecutions, *United States v. Marden,* 872 F.2d 123, 126 (5th Cir.1989), it did so without either addressing the issue in terms of *Blockburger* or acknowledging that *Pinkerton* did not involve a successive prosecution. We respectfully, but I think correctly, part company with the *Marden* court.

HARRY T. EDWARDS, Circuit Judge, dissenting in part and concurring in part:

I dissent to express my strong disagreement with the majority's conclusion that application of the double jeopardy clause in the conspiracy setting turns on the character of the Government's proof. I would

reverse the judgment of the District Court because it is plainly at odds with Supreme Court precedent. I would also remand the case to allow the Government to proceed with prosecution unimpeded by the double jeopardy clause.

Like the majority, I conclude that *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), supplies the proper analysis in successive-prosecution cases. Supreme Court precedent makes it abundantly clear that whether two offenses are the "same" for double jeopardy purposes hinges on their statutory definition, not on the evidence presented at trial.

Unlike the majority, however, I do not believe that a different rule applies when one of the offenses in question happens to be conspiracy. The Supreme Court has "long and consistently recognized ... that the commission of [a] substantive offense and a conspiracy to commit it are *separate and distinct* offenses." *Pinkerton v. United States,* 328 U.S. 640, 643, 66 S.Ct. 1180, 1182, 90 L.Ed. 1489 (1946) (emphasis added). It follows inescapably that the double jeopardy clause poses no bar to convicting a defendant for both conspiracy and a substantive offense, "even when prosecuted separately under separate indictments, *and* when the same evidence proves both offenses." *United States v. Marden,* 872 F.2d 123, 125 (5th Cir.1989) (citations omitted) (emphasis added). Until today, *every* circuit court considering this question has adhered to this view. To suggest otherwise is to obscure one of the few clear teachings of the Supreme Court's double jeopardy jurisprudence, and unnecessarily to create a split between this court and our sister circuits.

I. BACKGROUND

The facts underlying this case are addressed in the majority opinion and need be restated only briefly here. Appellees Susan Rosenberg, Timothy Blunk and Alan Berkman (collectively "the appellees") all stand indicted for multiple counts of violating 18 U.S.C. § 844(f) (Supp. V 1987) for their alleged participation in a series of

bombings carried out in Washington during 1983 and 1984. *See* Joint Appendix ("J.A.") 194–97.[1] All three have been previously convicted in federal court for conspiracy to possess unregistered firearms, explosive devices and false identification documents—Rosenberg and Blunk in a trial conducted in the District of New Jersey ("the New Jersey trial"), and Berkman in a trial conducted in the Eastern District of Pennsylvania ("the Pennsylvania trial"). *See* J.A. 64, 85, 513–14.[2] The appellees now maintain that, insofar as appellant United States ("the Government") proposes to rely on the same evidence introduced in the New Jersey and Pennsylvania trials, the double jeopardy clause bars the instant prosecution. The District Court agreed and dismissed the indictment. *See United States v. Whitehorn*, 710 F.Supp. 803, 843–52 (D.D.C.1989).

The issue on appeal is whether successively prosecuted offenses are the "same" for double jeopardy purposes merely because they arise out of a common factual transaction. Because Supreme Court precedent conclusively establishes that the identity of two offenses turns on the elements of the statutes in question rather than on the evidence adduced at trial, and because conspiracy by this test is a separate offense from destruction of government property by bombing, I would reverse the District Court and permit the instant prosecution to go forward unimpeded by the double jeopardy clause.

## II. The District Court's Application of an "Actual-Evidence" Test is Wrong as a Matter of Law

Since at least as early as the 1911 case of *Gavieres v. United States*, 220 U.S. 338, 31 S.Ct. 421, 55 L.Ed. 489 (1911), the Supreme Court has made clear that whether two offenses are the "same" for double jeopar-

dy purposes is a matter of statutory definition, not a matter of the evidence alleged in the indictment or adduced at trial. The defendant in *Gavieres* challenged his convictions for insulting a public official and for drunk and disorderly conduct, arguing that he could not be prosecuted successively under different statutes for a single course of conduct. The Court rejected this claim:

> It is true that the acts and words of the accused set forth in both charges are the same; but in the second case it was charged, as was essential to conviction, that the misbehavior in deed and words was addressed to a public official. In this view we are of opinion that while the *transaction charged* is the same in each case, the *offenses* are different.

*Id.* at 342, 31 S.Ct. at 422 (emphasis added).

It is from the *Gavieres* Court's distinction between factual transaction and statutory offense that the so-called *"Blockburger* test" derives. *See Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932). A multiple punishment case, *Blockburger* upheld the defendant's convictions under separate sections of a federal law regulating the sale of narcotics. Citing *Gavieres*, the Court announced that, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.* The Court repeatedly has indicated that this test looks only to the elements of the statutes in question, not to the evidence alleged in the indictment or relied upon at trial. *See, e.g., Albernaz v. United States*, 450 U.S. 333, 337–38, 101 S.Ct. 1137, 1141–42, 67 L.Ed.2d 275 (1981); *Iannelli v. United States*, 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975). *See also United*

---

1. The indictment also charges three additional codefendants with destruction of government property by bombing, and with conspiracy to destroy government property by bombing. See J.A. 175–97. Although not charged in the conspiracy count of the indictment, all of the appellees are identified as unindicted coconspirators. See J.A. 175–76.

2. Each appellee was also convicted for the substantive offenses of possession of unregistered firearms, possession of false identification documents and possession of destructive devices. These convictions, however, are immaterial to the issues raised on appeal.

States v. Coachman, 727 F.2d 1293, 1301–02 (D.C.Cir.1984). Moreover, because the test is designed merely to determine whether the legislature intended to create independent criminal prohibitions, the Court has also made clear that *Blockburger* need not even be consulted when the legislature's will appears clearly in the language or history of the relevant statutes. *See, e.g., Albernaz*, 450 U.S. at 340, 101 S.Ct. at 1143. *See also United States v. Anderson*, 851 F.2d 384, 391 (D.C.Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 801, 102 L.Ed.2d 792 (1989).

The Supreme Court has continued to follow the rule of *Gavieres* and *Blockburger* in its most recent successive-prosecution cases. *See, e.g., Illinois v. Vitale*, 447 U.S. 410, 416, 100 S.Ct. 2260, 2265, 65 L.Ed.2d 228 (1980); *Brown v. Ohio*, 432 U.S. 161, 166, 97 S.Ct. 2221, 2225–26, 53 L.Ed.2d 187 (1977).[3] *Vitale*, a case examining the double-jeopardy implications of greater and lesser-included offenses, identified the *Blockburger–Gavieres* rule as "the principal test for determining whether two offenses are the same for purposes of barring successive prosecutions," and reiterated that "this test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." 447 U.S. at 416, 100 S.Ct. at 2265.[4] *See also Garrett v. United States*, 471 U.S. 773, 790, 105 S.Ct. 2407, 2417, 85 L.Ed.2d 764 (1985) (noting that the Court has "steadfastly refused to adopt the 'single transaction' view of the Double Jeopardy Clause").[5] Primarily on the strength of the Supreme Court's decision in *Vitale*, this court rejected an "actual evidence" test for successive-prosecution cases in *United States v. Black*, 759 F.2d 71, 73 (D.C.Cir. 1985) (per curiam).[6]

In a successive prosecution following a conviction, a court performing double jeopardy analysis should examine the evidence only if it determines—on the basis of

3. Cases dealing with resentencing as a remedy for double jeopardy violations also demonstrate that *Blockburger* is controlling in the successive-prosecution setting. In *Morris v. Mathews*, 475 U.S. 237, 106 S.Ct. 1032, 89 L.Ed.2d 187 (1986), the Court held that the double jeopardy clause violation caused by successively convicting the defendant for aggravated robbery and aggravated murder could be corrected by vacating the sentence for the latter offense and resentencing the defendant for the lesser-included but not jeopardy-barred offense of murder. See *id.* at 246–47, 106 S.Ct. at 1037–38. In *Jones v. Thomas*, —— U.S. ——, 109 S.Ct. 2522, 2527 n. 3, 105 L.Ed.2d 322 (1989)—another resentencing case—the Court explained the result in *Mathews:* "Because nonfelony murder is not the same offense as ... [aggravated] robbery, see, e.g., *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) (defining "same offense"), there would be no double jeopardy bar to punishing [the defendant] for that offense, even through a second full trial." The Court attached no significance to the substantial overlap of evidence in the two trials in *Mathews*, which arose from a single factual transaction.

4. *Vitale's* confirmation that the *Blockburger–Gavieres* test looks solely to the elements of the respective offenses and not to the evidence used to prove them dispels the concurring opinion's suggestions that the test incorporates reference to the underlying factual transaction, and that the test is even more fact sensitive in successive-prosecution cases than in multiple-punishment cases. Moreover, as in the multiple-punishment setting, the "presumption" that two offenses are the "same" if they possess identical elements under the *Blockburger* test "must ... yield to a plainly expressed contrary view on the part of Congress." *Garrett v. United States*, 471 U.S. 773, 779, 105 S.Ct. 2407, 2412, 85 L.Ed.2d 764 (1985).

5. The Court in *Garrett* concluded from the legislative history of 21 U.S.C. § 848 (Supp. V 1987) that Congress intended the offense of engaging in a "continuing criminal enterprise" to be distinct from the predicate offenses on which it is based, making application of the *Blockburger* test unnecessary. *See* 471 U.S. at 778–86, 105 S.Ct. at 2411–15.

6. The appellees cite *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889), to support their arguments in favor of an actual evidence test. However, *Nielsen* merely stands for the proposition that statutes that appear on their face to have distinctive elements may, upon inspection, be determined to be identical in scope. In *Nielsen*, the Supreme Court construed the crime of "unlawful cohabitation" to contain the implicit element that the defendant live in a polygamous relationship. On that basis, the Court determined that cohabitation was the same offense for double jeopardy purposes as adultery. *See* 131 U.S. at 189, 9 S.Ct. at 676. In any event, *Nielsen* was decided almost 100 years before *Vitale* and *Garrett*, both of which clearly reject an actual evidence test.

*Blockburger* or some other authoritative indicator of legislative intent—that the two offenses in question *are* the "same." [7] A transactional inquiry is appropriate at that stage to assure both that the Government does not prosecute a defendant twice for a single violation of the relevant statute or statutes and that the Government is permitted to charge or prosecute the defendant independently for each and every separate violation. *See, e.g., United States v. Broce,* — U.S. —, 109 S.Ct. 757, 768, 102 L.Ed.2d 927 (1989) (Stevens J., concurring) (suggesting that particular factual transaction constituted single conspiracy violation but multiple substantive violations of Sherman Act). Thus, courts routinely consult the alleged or actual evidence as a means of implementing the prohibition of *Braverman v. United States,* 317 U.S. 49, 52–53, 63 S.Ct. 99, 101, 87 L.Ed. 23 (1942), against multiple prosecutions for a single conspiracy. *See, e.g., United States v. Reiter,* 848 F.2d 336, 340 (2nd Cir.1988); *United States v. Atkins,* 834 F.2d 426, 432 (5th Cir.1987). Similarly, courts turn to the facts once they determine that a defendant has been convicted for both a greater and a lesser-included offense. *See, e.g., Brown,* 432 U.S. at 169–70, 97 S.Ct. at 2227.

The opinion of the District Court misconstrues these cases. The trial court found the use of an actual-evidence test by courts *after* they have determined that two or more offenses are the same to mean that such a test should be used to determine *whether* the offenses are the same. This clearly is not the law, and appellees' suggestions to the contrary are simply wrong.[8]

III. THE MAJORITY MISCONSTRUES THE LAW IN RELYING ON *PINKERTON* TO SUPPORT A LIMITED "ACTUAL-EVIDENCE" TEST

*Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946), remains the Supreme Court's leading precedent on double jeopardy in the conspiracy setting. In that case, the Court rejected the claim that the Constitution protected the petitioners from being found guilty both of conspiracy to violate the tax code and of tax evasion based on a single course of conduct. Two holdings from *Pinkerton* are pertinent to this case. The first is the Court's conclusion that Congress intended conspiracy to be a crime independent of any substantive offense in which it culminates. "It has been long and consistently recognized," the Court noted, "that the

7. A court may examine the evidence used in a trial resulting in an *acquittal* to determine whether the Government is collaterally estopped from relitigating particular factual issues in a successive prosecution. *See Ashe v. Swenson,* 397 U.S. 436, 443–47, 90 S.Ct. 1189, 1194–96, 25 L.Ed.2d 469 (1970). As the Court noted in *Brown,* the doctrine of collateral estoppel can apply even if the two offenses are not the "same" under *Blockburger. See* 432 U.S. at 166 n. 6, 97 S.Ct. at 2226 n. 6.

8. The appellees point to a particular passage in *Vitale, see* 447 U.S. at 420, 100 S.Ct. at 2267, that they claim endorses an actual-evidence test in successive-prosecution cases. *See* Brief for Appellee Berkman at 20–21; Brief for Appellees Susan L. Rosenberg & Timothy A. Blunk at 19–20. The appellees' reading of *Vitale* cannot be correct. Like the majority, I an persuaded by then-Justice Rehnquist's view that the supposedly ambiguous language in *Vitale* cannot be read to support an actual-evidence test given the plain holding of the Court, *see* 447 U.S. at 416, 100 S.Ct. at 2265, that the identity of two or more offenses for double jeopardy purposes turns solely on their respective elements. *See Thigpen v. Roberts,* 468 U.S. 27, 35–36, 104 S.Ct.

2916, 2921, 82 L.Ed.2d 23 (1984) (Rehnquist, J., dissenting). Indeed, I read the disputed language in *Vitale* to indicate merely that a transactional analysis would be appropriate in the event that the lower court determined on remand that the offenses in question—"failing to reduce speed" and involuntary manslaughter—were in fact the "same" under *Blockburger. See supra* text accompanying notes 6–8.

In any case, in *Black,* we construed *Vitale* to mandate an inquiry into the statutory elements rather than into the evidence, *see* 759 F.2d at 73, and the vast majority of circuits share that interpretation. *See United States v. Benton,* 852 F.2d 1456, 1465 (6th Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 555, 102 L.Ed.2d 582 (1988); *United States v. Aguilar,* 849 F.2d 92, 96–97 (3d Cir. 1988); *Flittie v. Solem,* 775 F.2d 933, 937–38 (8th Cir.1985), *cert. denied* 475 U.S. 1025, 106 S.Ct. 1223, 89 L.Ed.2d 333 (1986); *Pugliese v. Perrin,* 731 F.2d 85, 89 (1st Cir.1984); *United States v. Genser,* 710 F.2d 1426, 1428–29 (10th Cir.1983); *Archer v. Commissioner of Correction,* 646 F.2d 44, 47 n. 2 (2d Cir.) (dictum), *cert. denied,* 454 U.S. 851, 102 S.Ct. 291, 70 L.Ed.2d 141 (1981); *United States v. Brooklier,* 637 F.2d 620, 624 (9th Cir.1980), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 815 (1981).

commission of [a] substantive offense and a conspiracy to commit it are separate and distinct offenses," and consequently "the plea of double jeopardy is no defense to a conviction for both...." *Id.* at 643, 66 S.Ct. at 1182. *Accord Pereira v. United States,* 347 U.S. 1, 11, 74 S.Ct. 358, 364, 98 L.Ed. 435 (1954); *United States v. Boyle,* 482 F.2d 755, 766 (D.C.Cir.), *cert. denied,* 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973); *see also United States v. Bayer,* 331 U.S. 532, 541–42, 67 S.Ct. 1394, 1398–99, 91 L.Ed. 1654 (1947) (no bar to prosecution for conspiracy following conviction for substantive offense in military court).

The second pertinent holding is that the Government may prove a defendant's guilt of both the substantive offense and the conspiracy through overlapping evidence. Even absent direct evidence that the defendant committed the substantive offense in question, the jury, if properly charged, may find the defendant guilty of the substantive offense so long as it finds that he engaged in the conspiracy and that his *codefendant* committed the substantive offense as a reasonably foreseeable means of furthering their shared criminal ends. *See Pinkerton,* 328 U.S. at 645–48, 66 S.Ct. at 1183–84. This theory is now known as the *"Pinkerton* doctrine."

Relying on *Pinkerton* and its progeny, the circuit courts of appeals have uniformly held that the double jeopardy clause poses no bar to convicting a defendant for both conspiring to commit an offense and actually committing it, regardless of the order in which the two are prosecuted and regardless of the Government's proof at trial.

*See, e.g., United States v. McCullah,* 745 F.2d 350, 355 (6th Cir.1984); *United States v. Kalish,* 734 F.2d 194, 197–98 (5th Cir. 1984), *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 321 (1985); *United States v. Brooklier,* 637 F.2d 620, 624 (9th Cir. 1980), *cert. denied,* 450 U.S. 980, 101 S.Ct. 1514, 67 L.Ed.2d 815 (1981); *United States v. Cruz,* 568 F.2d 781, 782–84 (1st Cir.1978), *cert. denied,* 444 U.S. 898, 100 S.Ct. 205, 62 L.Ed.2d 133 (1979).[9] As the Fifth Circuit recently concluded, "[c]onvictions for both conspiracy and the substantive offense that is the object of the conspiracy generally do not constitute double jeopardy, even when prosecuted separately under separate indictments, and when the same evidence proves both offenses." *United States v. Marden,* 872 F.2d 123, 125 (5th Cir.1989) (citations omitted) (emphasis added).[10] The only exception to this rule is when a particular substantive offense has no elements distinct from those of conspiracy, making the two the "same" under the *Gavieres–Blockburger* test. *See Pereira,* 347 U.S. at 11, 74 S.Ct. at 364; *Marden,* 872 F.2d at 125.[11]

Under these principles, there can be no double jeopardy impediment to the prosecution of the appellees. Even assuming that the Washington bombings with which the appellees are now charged were the product of the conspiracies for which the appellees were convicted in the New Jersey and Pennsylvania trials, the fact remains that the bombings and the conspiracies are separate offenses under the *Gavieres–Blockburger* test: the conspiracy

**9.** The Sixth Circuit reached a different conclusion in *United States v. Austin,* 529 F.2d 559, 562–64 (6th Cir.1976), apparently relying on an actual-evidence test to bar multiple punishments for conspiracy to bribe and bribery. Since *Austin* was decided, however, the Supreme Court has made it clear that the *Blockburger* test—relied upon by the court in *Austin*—looks *only* at the elements of the offense, not the evidence adduced at trial. *See, e.g., Vitale,* 447 U.S. at 416, 100 S.Ct. at 2265. Even the Sixth Circuit has subsequently backed away from *Austin,* permitting *successive* prosecutions for conspiracy and a substantive offense based on overlapping evidence. *See McCullah,* 745 F.2d at 355–56.

**10.** In *Black,* this court, although not relying explicitly on *Pinkerton,* found no double jeopar-

dy problem in a case in which the defendant was being prosecuted for conspiring to violate and for violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 (Supp. V 1987) ("RICO"), even though the Government intended to use essentially the same evidence relied upon previously to convict the defendant of various conspiracy and substantive offenses. *See* 759 F.2d at 73.

**11.** In this context, too, the presumption of identity can be overcome by an express sign of contrary legislative intent. *See Iannelli v. United States,* 420 U.S. 770, 782, 95 S.Ct. 1284, 1292, 43 L.Ed.2d 616 (1975).

charges required proof of an *agreement* not required to be shown by the bombing charges; and the bombing charges require proof of a *bombing* not required to be shown under the conspiracy charges. *Compare* 18 U.S.C. § 371 (1982) *with* 18 U.S.C. § 844(f) (Supp. V 1987). It does not matter that the Government intends to prove the appellees' guilt on the bombing charges with evidence implicating them in the conspiracies. *See United States v. Boyle*, 482 F.2d 755, 766–67 (D.C.Cir.), *cert. denied*, 414 U.S. 1076, 94 S.Ct. 593, 38 L.Ed.2d 483 (1973). "That the substantive conviction [is] obtained through a *Pinkerton* [doctrine] instruction is irrelevant" for purposes of double jeopardy. *United States v. Cerone*, 830 F.2d 938, 944 (8th Cir.1987), *cert. denied*, — U.S. —, 108 S.Ct. 1730, 100 L.Ed.2d 194 (1988); *see Marden*, 872 F.2d at 126 (no bar to successive prosecution based on *Pinkerton* doctrine); *United States v. Manzella*, 791 F.2d 1263, 1270 (7th Cir.1986) (no bar to retrying defendant for substantive offense on *Pinkerton* theory following affirmance of conspiracy conviction but reversal of substantive-offense conviction); *see also United States v. Wylie*, 625 F.2d 1371, 1382 n. 15 (9th Cir.1980) (dictum), *cert. denied*, 449 U.S. 1080, 101 S.Ct. 863, 66 L.Ed.2d 804 (1981).

Notwithstanding the overwhelming weight of Supreme Court and lower court authority, the majority reaches a different conclusion. The majority accepts, as do I, that *Blockburger* and *Gavieres* supply the proper analysis in successive-prosecution cases. It concludes, however, that once a defendant has been convicted for conspiracy, the Government in a subsequent trial is barred from relying on the *Pinkerton* doctrine to prove the defendant's guilt of any connected substantive offense. Because, under the *Pinkerton* doctrine, the Government need only show that the defendant engaged in the conspiracy and that some member of the conspiracy committed the substantive offense in question, the

majority reasons that the conspiracy in effect becomes an "element" or even a "lesser-included offense" of the substantive offense. The majority therefore concludes that the appellees can be prosecuted for the Washington bombings only if the Government forgoes reliance on the *Pinkerton* doctrine.

In my view, the majority's holding seriously misconstrues the *Pinkerton* doctrine. The *Pinkerton* doctrine is a *theory of proof*—nothing more and nothing less. That its use does not transform the elements of the substantive offense in any manner relevant to the double jeopardy clause is borne out by the result in *Pinkerton* itself. *See Marden*, 872 F.2d at 126; *Cerone*, 830 F.2d at 944–45; *Wylie*, 625 F.2d at 1382 n. 15. Indeed, if reliance on such a theory *had been* understood by the Court in *Pinkerton* to somehow alter the elements of the substantive offense, the Court would have been obliged to strike down the petitioner's conviction as a violation of the prohibition on common law crimes. *See United States v. Hudson & Goodwin*, 11 U.S. (7 Cranch) 32, 3 L.Ed. 259 (1812). *"[D]efinition* of the elements of a criminal offense is entrusted to the legislature," *Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 2087, 85 L.Ed.2d 434 (1985) (emphasis added), and the judiciary's sole responsibility is to assure that the Government's proof, if believed by the jury, satisfies those elements. *See Whalen v. United States*, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980) ("[T]he power to define criminal offenses ... resides wholly with the Congress."). Because the *Pinkerton* doctrine, then, necessarily relates *only* to the evidence sufficient to prove a defendant's violation of a particular substantive offense, the majority's disposition of this case reintroduces the actual-evidence test into double jeopardy analysis, an approach the majority admits is foreclosed by governing Supreme Court precedent.[12]

12. The majority also finds significant the Government's concession that it is barred from trying the appellees for the conspiracy alleged against the appellees' codefendants because this

conspiracy is the "same" under *Braverman* as those for which the appellees were convicted in the New Jersey and Pennsylvania trials. *See* Brief for Appellant at 2 n. 3. I do not find this

The majority and concurring opinions note that only the Fifth Circuit, *see Marden,* 872 F.2d at 126, has reached the conclusion, rejected by the majority, that *Pinkerton* itself controls on whether the *Pinkerton* doctrine can be relied on in a successive prosecution following a conviction for conspiracy. This observation misleadingly understates the tension between today's holding and the case law of our sister circuits. Every circuit court of appeals that has considered the majority opinion's *underlying premise* —that use of the *Pinkerton* doctrine "transforms" conspiracy into a lesser-included offense of the substantive offense—has unequivocally rejected it as inconsistent with the *Pinkerton* decision. *See Marden,* 872 F.2d at 126; *Cerone,* 830 F.2d at 944–45; *Wylie,* 625 F.2d at 1381–82, 1382 n. 15 (dictum); *cf. Manzella,* 791 F.2d at 1270 (suggesting no bar to retrying defendant for substantive offense on *Pinkerton* theory following affirmance of conspiracy conviction but reversal of substantive-offense conviction). Nor can it be constitutionally significant that some of these cases—like *Pinkerton* itself—involved multiple punishments rather than successive prosecutions, for if one offense is a lesser-included offense of another, a defendant cannot be convicted of both in a single prosecution, *see Whalen,* 445 U.S. at 693–94, 100 S.Ct. at 1438–39, *or* in successive prosecutions, *see Brown,* 432 U.S. at 166–69, 97 S.Ct. at 2226–27.

Both the majority and concurring opinions cite *United States v. Larkin,* 605 F.2d 1360 (5th Cir.1979), *withdrawn in part,* 611 F.2d 585 (5th Cir.), *cert. denied,* 446 U.S. 939, 100 S.Ct. 2160, 64 L.Ed.2d 793 (1980), to support their conclusion that use of the *Pinkerton* doctrine transforms conspiracy into a lesser-included offense of the substantive offense. *Larkin,* however, is not by any means authoritative on the issue before us. First, the court in *Larkin expressly declined* to rule on the defendant's argument that the Government's reliance on a *Pinkerton* theory barred a subsequent prosecution for conspiracy following his acquittal of a substantive offense. *See* 605 F.2d at 1367. Second, since *Larkin,* the Fifth Circuit has squarely *rejected* the very rule adopted by the majority, "noting simply that *Pinkerton* itself ruled that double jeopardy is not breached when a conspirator is convicted of a substantive offense by way of the coconspirator rule, and is also convicted of conspiracy to commit the same substantive offense." *See Marden,* 872 F.2d at 126.[13]

concession troubling. If, as I believe, the Government would be free in a trial of the appellees alone to establish their guilt of the substantive bombing offenses through the *Pinkerton* doctrine, it does not matter for double jeopardy purposes that the Government has joined these charges with others arising from the same factual transaction. The trials should be severed if the Government attempts to rely on joinder to introduce against the codefendants evidence that is sufficiently prejudicial to, and not otherwise admissible against, the appellees. *See United States v. Hernandez,* 780 F.2d 113, 119 (D.C.Cir.1986). But because ruling on a motion to sever presupposes knowing what evidence *would be* admissible against a defendant if tried *alone,* it cannot be maintained that joinder somehow *creates* a double jeopardy problem. For the same reason, cases examining the prejudicial "spillover" of evidence when a jeopardy-barred offense and a nonbarred offense are tried together against a *single* defendant, *see, e.g., Benton v. Maryland,* 395 U.S. 784, 797–98, 89 S.Ct. 2056, 2064, 23 L.Ed.2d 707 (1969); *Pacelli v. United States,* 588 F.2d 360, 363–64 (2d Cir.1978), *cert. denied,* 441 U.S. 908, 99 S.Ct. 2001, 60 L.Ed.2d 378 (1979), shed no light on the issue in this case.

13. The majority also seeks support for its disposition in *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985), but that opinion cannot possibly justify the majority's new rule for cases tried on a *Pinkerton* theory. In *Garrett,* the Supreme Court held that Congress intended the "continuing criminal enterprise" component of the Comprehensive Drug Abuse Prevention and Control Act, 21 U.S.C. § 848 (Supp. V 1987) ("CCE"), to be distinct from the predicate drug offenses on which the CCE offense is based. *See* 471 U.S. at 777–86, 105 S.Ct. at 2410–15. On the strength of *Garrett,* lower courts have held that the Government may, consistent with the double jeopardy clause, rely on a defendant's previous conviction as one of the predicate offenses necessary to obtain a CCE conviction. *See, e.g., United States v. Amen,* 831 F.2d 373, 380–81 (2d Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 1573, 99 L.Ed.2d 889 (1988). Along with other lower courts, we reached an identical conclusion in *Black* concerning reproof of a previous conviction as a predicate offense under RICO. *See Black,* 759 F.2d at 73–74 (citing cases). By the same logic, the double jeopardy clause should not prohibit the Government from reproving the appellees'

Judge Williams concludes that *Pinkerton* is not controlling because the *Pinkerton* Court failed to "explain" how its double-jeopardy holding and its statutory-construction holding could be reconciled. I do not agree. The Court's conclusion that "[a] substantive offense and a conspiracy to commit it are separate and distinct offenses," 328 U.S. at 643, 66 S.Ct. at 1182, explains it all. Once it is determined that Congress intended the two offenses to be separate as a statutory matter, it is irrelevant for double jeopardy purposes how the Government *proves* the two offenses in a particular case. Moreover, I can think of no persuasive *theory* under which we could limit *Pinkerton* to multiple-punishment cases while remaining faithful to its holding that conspiracy and its target substantive offense are "separate and distinct."

In short, *Pinkerton* itself is dispositive of the issue at hand. However, if it were necessary to go beyond *Pinkerton* to resolve the question before us, a useful source of guidance would be cases examining the double-jeopardy implications of aider-and-abettor liability. The policies underlying the *Pinkerton* doctrine and aider-and-abettor liability are very similar,[14] and this explains the willingness of courts to allow the Government to use such theories interchangeably to obtain a conviction. *See, e.g., Nye & Nissen v. United States,* 336 U.S. 613, 618–20, 69 S.Ct. 766, 769–70, 93 L.Ed. 919 (1949); *Cerone,* 830 F.2d at 944 (citing cases). Courts properly find no double jeopardy obstacle to conviction for conspiracy and for aiding-and-abetting in a substantive offense, whether the two offenses are tried in a single trial, *see, e.g., Nye & Nissen,* 336 U.S. at 618–19, 69 S.Ct. at 769–70; *United States v. Sidener,* 876

F.2d 1334, 1336–37 (7th Cir.1989), or successively, *see, e.g., Marden,* 872 F.2d at 126; *McCullah,* 745 F.2d at 355. No principled ground exists for treating cases tried on a *Pinkerton* theory any differently.

The appellees invoke policy considerations to justify a special double jeopardy rule in the conspiracy setting. Their fear is that the Government, armed with the *Pinkerton* doctrine, could "reprove" a defendant's guilt of conspiracy over and over again in order to establish his guilt of various substantive offenses. Such a result, the appellees argue, would transgress the double-jeopardy-clause values of finality and repose. *See* Brief for Appellee Alan Berkman at 37–38; Brief for Appellees Susan L. Rosenberg and Timothy A. Blunk at 43–45.

These concerns are not sufficient to support the limited actual-evidence test established by the majority. Finality and repose, it is true, play a prominent role in application of the double jeopardy clause in the successive-prosecution setting. *See, e.g., United States v. Wilson,* 420 U.S. 332, 343, 95 S.Ct. 1013, 1021–22, 43 L.Ed.2d 232 (1975). But these values assume constitutional proportions only when the offenses that are the subject of the successive trials are the *same;* under the double jeopardy clause, "[i]t is only an *identity* of offenses which is fatal." *Pinkerton,* 328 U.S. at 644, 66 S.Ct. at 1182 (emphasis added). Because conspiracy and the substantive offense of destruction by bombing are *not* identical—no matter what theory of proof the Government intends to rely on at trial—the appellees have no cognizable interest in avoiding prosecution.

involvement in the conspiracy at issue as a means of establishing their liability for the Washington bombings.

The majority correctly notes that the Court in *Garrett* looked to the evidence charged in the respective indictments. The Court did so, however, only to show that the petitioner's CCE conviction was based in part on factual transactions occurring after those underlying his prior conviction for a predicate offense, and that, consequently, the double jeopardy clause was inapplicable even *assuming* the latter offense

was a lesser-included offense of the former. *See* 471 U.S. at 790–93, 105 S.Ct. at 2417–19.

**14.** At their core, the *Pinkerton* and the aider-and-abettor doctrines embody the same principle: a defendant who willingly enters into a confederacy of crime can legitimately be held accountable for all reasonably foreseeable offenses committed by his confederates. *See* Johnson, *The Unnecessary Crime of Conspiracy,* 61 CALIF.L.REV. 1137, 1146–48 (1973); *cf.* Note, *Developments in the Law—Criminal Conspiracy,* 72 HARV.L.REV. 920, 998–99 (1959).

In any case, the concern that the Government might follow up a conspiracy conviction with a series of substantive-offense prosecutions all founded on the *Pinkerton* doctrine is simply not a credible one in our system of criminal justice. The most substantial deterrent to such a policy is the prospect that the Government might lose one case and thereafter be collaterally estopped from relitigating any necessarily determined factual issue. *See Ashe v. Swenson*, 397 U.S. 436, 443–47, 90 S.Ct. 1189, 1194–96, 25 L.Ed.2d 469 (1970). Moreover, a failure to join transactionally related offenses in a single prosecution also exposes the Government to the risk that subsequent prosecutions will be time-barred under the applicable statute of limitations. Finally, an unjustified succession of prosecutions might very well support an inference of prosecutorial vindictiveness in violation of due process of law. *See generally Blackledge v. Perry*, 417 U.S. 21, 24–29, 94 S.Ct. 2098, 2100–03, 40 L.Ed.2d 628 (1974). Thus, "absent 'governmental oppression of the sort against which the Double Jeopardy Clause was intended to protect,' the compelling public interest in punishing crimes," *Garrett*, 471 U.S. at 796, 105 S.Ct. at 2420 (O'Connor, J., concurring) (quoting *United States v. Scott*, 437 U.S. 82, 91, 98 S.Ct. 2187, 2194, 57 L.Ed.2d 65 (1978)), condemns the extension of the double jeopardy clause endorsed today by the majority.

The problem with the majority's approach is that it invites prosecutorial bad faith. Because the majority's rule prohibits the Government in a successive prosecu-

tion from using a particular theory of proof—the *Pinkerton* doctrine—the rule announced today will create strong incentives for the Government to distort its evidence to fit a licit theory. The only alternative to using such a tactic is to join transactionally related conspiracy and substantive offenses in a single prosecution—a course that the Supreme Court has "steadfastly refused" to force upon the Government. *Garrett*, 471 U.S. at 790, 105 S.Ct. at 2417. Since I believe that forcing the Government's hand in this way will necessarily distort "prosecutorial judgments concerning the adequacy of the evidence, the efficient allocation of enforcement resources, and the desirability of seeking" the sanctions that attend the respective offenses, *Garrett*, 471 U.S. at 798, 105 S.Ct. at 2421 (O'Connor, J., concurring), I find the majority's departure from *Blockburger* and *Pinkerton* unwise as well as unfounded.[15]

## III. CONCLUSION

The teachings of the Supreme Court are clear. First, for purposes of the double jeopardy clause, the identity of two or more offenses prosecuted successively is to be determined by "the statutory elements of each offense, rather than ... the actual evidence to be presented at trial." *Vitale*, 447 U.S. at 416, 100 S.Ct. at 2265. Second, "the commission of [a] substantive offense and a conspiracy to commit it are *separate and distinct* offenses." *Pinkerton*, 328 U.S. at 643, 66 S.Ct. at 1182 (emphasis added). These two propositions do not

**15.** There is another matter, to be considered on remand, that could figure prominently in the disposition of this case. The Supreme Court has recognized that an exception to the double jeopardy clause "may exist" permitting the Government to prosecute an otherwise barred charge when "additional facts necessary to sustain that charge ... h[ad] not been discovered [at the time of a previous trial on a related offense] despite the exercise of due diligence." *Brown*, 432 U.S. at 169 n. 7, 97 S.Ct. at 2227 n. 7. *Accord Vitale*, 447 U.S. at 420 n. 8, 100 S.Ct. at 2267 n. 8. The Government suggests that it discovered the evidence linking Rosenberg and Blunk to the Washington bombings only after their convictions in the New Jersey trial. *See* Reply Brief for Appellant at 16–17. Although

the District Court suggested that it was not inclined to credit this contention, it is unclear from the record whether this finding was influenced by the District Court's mistaken conclusion that the double jeopardy clause barred successive prosecutions based on the same actual evidence. *See Whitehorn*, 710 F.Supp. at 845 n. 146. In the event that the Government determines on remand that it cannot forego reliance on a *Pinkerton* theory of liability, nothing in today's opinion prevents the Government from attempting to establish or the District Court from finding that at the time of the New Jersey trial the Government could not have discovered by due diligence the evidence linking Rosenberg and Blunk to the Washington bombings.

through some mysterious process of legal alchemy change their character when combined. Simply put, the double jeopardy clause poses no bar to convicting a defendant for both conspiracy and a substantive offense, "even when prosecuted separately under separate indictments, *and* when the same evidence proves both offenses." *Marden*, 872 F.2d at 125 (citations omitted) (emphasis added). The rule announced by the majority commits this court to a result inconsistent with Supreme Court precedent and with the position adopted by our sister circuits. I cannot accept that the double jeopardy clause puts any limits on the form of proof the Government intends to rely upon at trial in this case.