******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JAMES MITCHELL
(AC 41897)

DiPentima, C. J., and Elgo and Moll, Js.

*Syllabus*

The defendant, who previously had been convicted of the crimes of attempt
to commit murder, conspiracy to commit murder, kidnapping in the
first degree, conspiracy to commit kidnapping in the first degree, sexual
assault in the first degree, conspiracy to commit sexual assault in the
first degree, assault in the first degree, conspiracy to commit assault in
the first degree and criminal possession of a firearm, appealed to this
court from the judgment of the trial court denying his motion to correct
an illegal sentence. The defendant claimed that the court improperly
concluded that his convictions for sexual assault in the first degree and
assault in the first degree, both predicated on liability under *Pinkerton*
v. *United States* (328 U.S. 640), did not violate the prohibition against
double jeopardy when considered in light of his conviction for conspir-
acy to commit kidnapping in the first degree. *Held* that the trial court
properly denied the defendant's motion to correct an illegal sentence,
as the double jeopardy claim advanced by the defendant was untenable:
each of the crimes of sexual assault in the first degree, assault in the
first degree and conspiracy to commit kidnapping in the first degree
plainly required proof of a fact that the others did not, and they were
not the same offense under the test enunciated in *Blockburger* v. *United
States* (284 U.S. 299); moreover, this court could not conclude that
the statutes in question evinced a clear legislative intent to prohibit a
defendant from being punished for the offenses of conspiracy to commit
kidnapping in the first degree, sexual assault in the first degree, and
assault in the first degree when they arise from the same transaction,
as the burden of demonstrating a contrary legislative intent rested with
the defendant, and he made no attempt to demonstrate such contrary
legislative intent; furthermore, like the defendants in *Pinkerton*, the
defendant's convictions and subsequent punishments for the conspiracy
count and the substantive counts that were predicated on *Pinkerton*
liability did not violate the double jeopardy clause, as the commission
of a substantive offense and a conspiracy to commit that offense are
separate and distinct offenses, and such claims have been rejected by
both federal courts and by our Supreme Court in *State* v. *Walton* (227
Conn. 32).

Argued October 9, 2019—officially released February 11, 2020

*Procedural History*

Substitute information charging the defendant with
the crimes of attempt to commit murder, conspiracy to
commit murder, kidnapping in the first degree, conspir-
acy to commit kidnapping in the first degree, sexual
assault in the first degree, conspiracy to commit sexual
assault in the first degree, assault in the first degree,
conspiracy to commit assault in the first degree and
criminal possession of a firearm, brought to the Supe-
rior Court in the judicial district of Hartford and tried
to the jury before *Mullarkey, J.*; verdict and judgment
of guilty, from which the defendant appealed to this
court, which affirmed the judgment; thereafter, the
court, *Hon. Edward J. Mullarkey*, judge trial referee,
granted in part the defendant's motion to correct an
illegal sentence, and the defendant appealed to this
court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appel-

lant (defendant).

*Rocco A. Chiarenza*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, James Mitchell, appeals from the judgment of the trial court denying in part his motion to correct an illegal sentence. On appeal, the defendant argues that the court improperly rejected his claim that his conviction for two crimes predicated on *Pinkerton* liability[1] violates the constitutional prohibition against double jeopardy. We affirm the judgment of the trial court.

The facts underlying the defendant's criminal conviction were set forth in this court's decision on his direct appeal. "On August 23, 2003, following an evening at a nightclub, the victim was dropped off at a friend's house in East Hartford. Wanting to return home, and with her residence too distant to walk, the victim called the defendant for a ride. The victim chose to call the defendant because she knew that Denasha Sanders, the mother of one of the defendant's children, had lived in the same building as the victim and that the defendant was frequently in the vicinity. The defendant and the victim's brother had had a prior confrontation concerning the fact that the victim's brother had dated Sanders. Shortly before August 23, the victim's brother and Sanders had moved to North Carolina with the child of Sanders and the defendant.

"The defendant arrived driving a gold Nissan Altima accompanied by another man, unknown to the victim at the time, but later identified as Travis Hampton. The victim agreed to go with the defendant and Hampton to downtown Hartford to get something to eat. Upon leaving a restaurant, the defendant became violent with the victim, striking her with his cell phone and demanding to know the location of the victim's brother. Out of fear that the defendant would harm her, the victim lied to the defendant and told him that her brother was at her grandfather's house. The victim attempted to leave the car, but the defendant pulled her by the hair and locked the doors. During this time, Hampton remained in the backseat of the vehicle.

"The defendant subsequently determined that the victim's brother was not at her grandfather's house. He drove the victim and Hampton to his mother's house in Hartford and ordered the victim out of the car. The victim briefly complied and then returned to the vehicle while the defendant and Hampton entered the house. When the defendant and Hampton returned, the three proceeded to leave the area by car. The defendant apologized to the victim for hitting her and offered her marijuana, which she accepted. Instead of driving the victim home, however, the defendant drove to Market Street in Hartford and parked his vehicle. The defendant told the victim he wanted to have sex with her and proposed that they go to a hotel or to Sanders' house.

"The victim refused and got out of the car, intending

to walk home. The defendant produced a shotgun, which he gave to Hampton, who pointed the weapon at the victim's face. The defendant and Hampton told the victim to remove her pants. The victim testified that the defendant raped her vaginally from behind. When the defendant was finished, he forced the victim to perform fellatio on Hampton. The victim complied briefly, and Hampton proceeded to rape her vaginally, while the defendant regained and held the shotgun. The victim grabbed her pants and yelled at the defendant to let her leave. The defendant told the victim she could get into a nearby dumpster or run. As the victim attempted to run, the defendant shot her in the side of the stomach. The victim continued her attempt to run away, followed by Hampton, who now had the shotgun. The defendant pursued the victim in the car and blocked her path. Hampton shot the victim again. He and the defendant then left the scene. Shortly thereafter, the defendant and Hampton returned briefly and then left the area again. The victim dragged herself to the street, where she was found by a passing driver. The police and paramedics were summoned, and the victim was taken to Hartford Hospital for treatment." *State* v. *Mitchell*, 110 Conn. App. 305, 308–10, 955 A.2d 84, cert. denied, 289 Conn. 946, 959 A.2d 1012 (2008).

The defendant subsequently was arrested and charged with attempt to commit murder as an accessory in violation of General Statutes §§ 53a-8, 53a-49 (a) and 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a (a), kidnapping in the first degree in violation of General Statutes §§ 53a-8 and 53a-92 (a) (2) (A), conspiracy to commit kidnapping in the first degree in violation of §§ 53a-48 and 53a-92 (a) (2) (A), sexual assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-70 (a) (1), conspiracy to commit sexual assault in the first degree in violation of §§ 53a-48 and 53a-70 (a) (1), assault in the first degree in violation of General Statutes §§ 53a-8 and 53a-59 (a) (5), conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (5), and criminal possession of a firearm in violation of General Statutes (Rev. to 2003) § 53a-217 (a) (1). Following a trial, the jury found the defendant guilty of all counts.[2]

At sentencing, the court vacated the defendant's sentences of conspiracy to commit murder, conspiracy to commit sexual assault in the first degree, and conspiracy to commit assault in the first degree. The court, at that time, explained that "[s]*ince the conspiracies merge*, [the] sentences [for those three offenses] are vacated to be renewed only if necessary on a resentencing should the conspiracy to [commit] kidnapping be found not to be a valid conviction." (Emphasis added.) The court then sentenced the defendant to a total effective term of fifty-seven years of incarceration.[3] From that judgment, the petitioner unsuccessfully appealed

to this court. See *State* v. *Mitchell*, supra, 110 Conn. App. 305.

In 2014, the defendant filed a motion to correct an illegal sentence pursuant to Practice Book § 43-22.[4] The defendant subsequently was appointed counsel, who filed a memorandum of law in support of the defendant's motion. At a hearing held on August 29, 2016, the defendant clarified the twofold nature of his motion to correct. First, the defendant asserted that the conspiracy convictions that "were ordered merged" at sentencing "should have been vacated." Second, the defendant alleged that his convictions for sexual assault in the first degree and assault in the first degree on the basis of *Pinkerton* liability; see footnote 2 of this opinion; violate the double jeopardy prohibition against multiple punishments in light of his conviction for conspiracy to commit kidnapping in the first degree.

Following the submission of memoranda of law by the parties,[5] the court granted in part the defendant's motion to correct. The court reviewed the transcript of the November 1, 2005 sentencing proceeding and noted that it had ordered the defendant's convictions for conspiracy to commit murder, conspiracy to commit sexual assault in the first degree, and conspiracy to commit assault in the first degree to be vacated in light of the fact that they had merged with the conviction of conspiracy to commit kidnapping in the first degree. In granting in part the defendant's motion to correct, the court vacated its November 1, 2005 order and, instead, ordered that the defendant's convictions for conspiracy to commit murder, conspiracy to commit sexual assault in the first degree, and conspiracy to commit assault in the first degree "are simply vacated." See *State* v. *Polanco*, 308 Conn. 242, 248, 61 A.3d 1084 (2013). At the same time, the court rejected the defendant's double jeopardy challenge and, accordingly, denied in part the motion to correct. From that judgment, the defendant now appeals.

On appeal, the defendant contends that the court improperly concluded that his convictions for sexual assault in the first degree and assault in the first degree, both of which were predicated on *Pinkerton* liability, do not violate the prohibition against double jeopardy when considered in light of his conviction for conspiracy to commit kidnapping in the first degree. On our plenary review of that question of law; see *State* v. *Burnell*, 290 Conn. 634, 642, 966 A.2d 168 (2009); we disagree.

The double jeopardy clause of the fifth amendment to the United States constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb . . . ."[6] That constitutional provision is applicable to the states through the due process clause of the fourteenth amendment. *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23

L. Ed. 2d 707 (1969). An alleged double jeopardy violation is a proper basis for a motion to correct an illegal sentence. See *State* v. *Wade*, 178 Conn. App. 459, 466, 175 A.3d 1284 (2017), cert. denied, 327 Conn. 1002, 176 A.3d 1194 (2018).

As the United States Supreme Court has observed, the double jeopardy clause has three functions: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. See *Brown* v. *Ohio*, 432 U.S. 161, 165, 97 S. Ct. 2221, 53 L. Ed. 2d 187 (1977). The third function is at issue in this appeal.

In the multiple punishments context, the interest protected by the double jeopardy clause "is limited to ensuring that the total punishment did not exceed that *authorized by the legislature.* . . . The purpose is to ensure that sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." (Citations omitted; emphasis added; internal quotation marks omitted.) *Jones* v. *Thomas*, 491 U.S. 376, 381, 109 S. Ct. 2522, 105 L. Ed. 2d 322 (1989). Accordingly, the question of whether a court constitutionally may impose multiple punishments is resolved by "determining what punishments the [l]egislative [b]ranch has authorized." *Whalen* v. *United States*, 445 U.S. 684, 688, 100 S. Ct. 1432, 63 L. Ed. 2d 715 (1980).

That determination involves a two step process. "First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 6, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009). For purposes of the present analysis, we assume without deciding that the first prong of that analysis is met, as the state alleged in its operative information that the offenses in question were perpetrated at the same time and location.[7] Our focus, therefore, is on whether the defendant's convictions for sexual assault in the first degree and assault in the first degree, which were predicated on *Pinkerton* liability, constitute the same offense as his conviction on the charge of conspiracy to commit kidnapping in the first degree.

To answer that question, we apply the rule of statutory construction enunciated in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), in which the United States Supreme Court explained: "[W]here the same act or transaction constitutes a violation of two distinct statutory provisions,

the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." That test "is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Bernacki*, 307 Conn. 1, 14, 52 A.3d 605 (2012), cert. denied, 569 U.S. 918, 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013). "The question to be resolved is whether the . . . offenses charged are actually one." (Internal quotation marks omitted.) *State* v. *Santiago*, 145 Conn. App. 374, 380–81, 74 A.3d 571, cert. denied, 310 Conn. 942, 79 A.3d 893 (2013). As a result, "[t]he issue, though essentially constitutional, becomes one of statutory construction." (Internal quotation marks omitted.) *State* v. *Alvaro F.*, supra, 291 Conn. 7.

With that test in mind, we turn to the three offenses in question. The crime of sexual assault in the first degree, as set forth in § 53a-70 (a) (1), requires proof that the defendant (1) compelled another person to engage in sexual intercourse, (2) used or threatened force in so doing, and (3) reasonably caused the victim to fear physical injury. By contrast, the crime of assault in the first degree contained in § 53a-59 (a) (5) requires proof that (1) the defendant acted with the intent to cause physical injury, (2) the defendant caused physical injury, and (3) that injury occurred due to the discharge of a firearm. Lastly, to prove a conspiracy to commit kidnapping in the first degree in violation of §§ 53a-48 and 53a-92 (a) (2) (A), the state had to prove, inter alia, that the defendant (1) intended to agree or conspire with Hampton, (2) intended to commit the crime of kidnapping in the first degree, and (3) committed an overt act in furtherance of that conspiracy. See generally *State* v. *Balbuena*, 168 Conn. App. 194, 200, 144 A.3d 540, cert. denied, 323 Conn. 936, 151 A.3d 384 (2016). Each of those three crimes plainly requires proof of a fact that the others do not, and the defendant has not argued otherwise in this appeal. They thus are not the same offense under *Blockburger*.

That conclusion does not end our inquiry, as the *Blockburger* test is simply a tool to divine legislative intent. See *United States* v. *Wylie*, 625 F.2d 1371, 1381 (9th Cir. 1980) ("*Blockburger* is merely a method for ascertaining the congressional intent to impose separate punishment for multiple offenses which arise during the course of a single act or transaction"), cert. denied, 449 U.S. 1080, 101 S. Ct. 863, 66 L. Ed. 2d 804 (1981); *State* v. *Greco*, 216 Conn. 282, 293, 579 A.2d 84 (1990) (*Blockburger* is rule of statutory construction to discern legislative purpose). For that reason, it "is not controlling when the legislative intent is clear from the face of the statute or the legislative history." *Garrett* v. *United States*, 471 U.S. 773, 779, 105 S. Ct. 2407, 85 L. Ed. 2d 764 (1985). *Blockburger*, then, is best viewed as "a rebuttable presumption of legislative intent" that

is overcome "when a contrary [legislative] intent is manifest." (Internal quotation marks omitted.) *State* v. *Wright*, 319 Conn. 684, 690, 127 A.3d 147 (2015).

The burden of demonstrating a contrary legislative intent rests with the defendant. See id. In the present case, the defendant has made no attempt to do so. He has presented no such argument in either his principal or reply brief and has not furnished this court with any legislative history of the statutes in question. Nor does our review of those statutes disclose any evidence of such intent. We therefore cannot conclude that the legislation in question evinces a clear legislative intent to prohibit a defendant from being punished for the offenses of conspiracy to commit kidnapping in the first degree, sexual assault in the first degree, and assault in the first degree, when they arise from the same transaction. Accordingly, the defendant's claim fails the analysis traditionally employed by our courts in addressing double jeopardy claims.

The defendant nonetheless argues that a different analysis should control when *Pinkerton* liability is at issue. Because that liability is predicated on criminal offenses committed by a coconspirator; see, e.g., *State* v. *Coward*, 292 Conn. 296, 307–308, 972 A.2d 691 (2009); the defendant posits that such liability effectively renders his convictions for sexual assault in the first degree and assault in the first degree tantamount to additional conspiracy convictions in contravention of the double jeopardy rule articulated in *Braverman* v. *United States*, 317 U.S. 49, 63 S. Ct. 99, 87 L. Ed. 23 (1942). He is mistaken.

Unlike the present case, *Braverman* did not involve defendants convicted of both conspiracy and substantive criminal offenses. In *Braverman*, the petitioners were charged with "seven counts, *each charging a conspiracy* to violate a separate and distinct" penal statute. (Emphasis added.) Id., 50. Following a trial, the jury found the petitioners guilty of all seven conspiracy counts. Id., 51. On appeal, the United States Supreme Court held that a single agreement with multiple objectives involving separate substantive offenses is but a single conspiracy that is punishable only once under a single conspiracy statute.[8] Id., 54. At the same time, the court recognized that "[a] conspiracy is not the commission of the crime which it contemplates" and, thus, remains distinguishable from the underlying substantive crime. Id.

The court reiterated that crucial distinction four years later in *Pinkerton* v. *United States*, 328 U.S. 640, 641, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946), which involved a defendant, Daniel Pinkerton, who had been convicted of one conspiracy count and six substantive counts. Although there was "no evidence to show that Daniel participated directly in the commission of the substantive offenses on which his conviction has been sus-

tained . . . there was evidence to show that these substantive offenses were in fact committed by [his brother and coconspirator Walter Pinkerton] in furtherance of the unlawful agreement or conspiracy existing between the brothers." (Footnote omitted.) Id., 645. After the trial court furnished what has come to be known as a *Pinkerton* instruction in its charge; see, e.g., *United States* v. *Diaz*, 176 F.3d 52, 100 (2d Cir. 1999); *State* v. *Brown*, 299 Conn. 640, 657–59, 11 A.3d 663 (2011); "[t]he question was submitted to the jury on the theory that each [defendant] could be found guilty of the substantive offenses, if it was found at the time those offenses were committed [that the] [defendants] were parties to an unlawful conspiracy and the substantive offenses charged were in fact committed in furtherance of it." *Pinkerton* v. *United States*, supra, 645.

Like the defendant in the present case, the defendants in *Pinkerton* relied on *Braverman* for their contention that their convictions of the substantive offenses "became merged in the conspiracy count" and that, as a result, "only a single sentence for conspiracy could be imposed." Id., 642. The United States Supreme Court disagreed, noting that, unlike the case before it, the indictment in *Braverman* "charged no substantive offense." Id. The court then explained that "[i]t has been long and consistently recognized . . . that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses. The power of [the legislature] to separate the two and to affix to each a different penalty is well established." Id., 643. Most significant, the court then held that "the plea of double jeopardy is no defense to a conviction for both offenses." Id. As a result, the defendants' convictions and subsequent punishments for the conspiracy count and the substantive counts that were predicated on *Pinkerton* liability did not violate the double jeopardy clause, and thus were affirmed. Id., 648.

Despite that precedent of this nation's highest court, defendants have continued to assert double jeopardy objections when convicted of both conspiracy and substantive criminal offenses based on *Pinkerton* liability in a single trial, albeit without success. For example, the defendants in one case claimed that "their convictions for conspiracy and for substantive acts taken in furtherance of the conspiracy under a theory of [*Pinkerton* liability] violate the [d]ouble [j]eopardy [c]lause . . . ." *United States* v. *Cerone*, 830 F.2d 938, 944 (8th Cir. 1987), cert. denied, 486 U.S. 1006, 108 S. Ct. 1730, 100 L. Ed. 2d 194 (1988), and cert. denied sub nom. *Aiuppa* v. *United States*, 486 U.S. 1006, 108 S. Ct. 1730, 100 L. Ed. 2d 194 (1988), and cert. denied sub nom. *LaPietra* v. *United States*, 486 U.S. 1006, 108 S. Ct. 1730, 100 L. Ed. 2d 194 (1988), and cert. denied sub nom. *Lombardo* v. *United States*, 486 U.S. 1006, 108 S. Ct. 1730, 100 L. Ed. 2d 194 (1988), and cert. denied sub nom. *Rockman* v. *United States*, 486 U.S. 1006, 108 S.

Ct. 1730, 100 L. Ed. 2d 194 (1988). The United States Court of Appeals for the Eighth Circuit disagreed, stating: "It is well settled that no double jeopardy violation occurs when a person is convicted of conspiracy and a substantive overt act of the conspiracy. . . . That the substantive conviction was obtained through a *Pinkerton* instruction is irrelevant." (Citations omitted.) Id. The court continued: "*Pinkerton* itself disposed of their [double jeopardy] argument. The [c]ourt there held that convictions for conspiracy and substantive acts committed in furtherance of the conspiracy do not violate the [d]ouble [j]eopardy [c]lause, even though the substantive conviction was obtained solely by means of participation in the conspiracy."[9] Id., 945. For that reason, the court concluded that the defendants' double jeopardy claim lacked merit.

The Connecticut Supreme Court too has rejected such a claim. In *State* v. *Walton*, 227 Conn. 32, 34, 630 A.2d 990 (1993), the named defendant appealed from the judgment of conviction of one count of conspiracy to distribute narcotics and one count of possession of narcotics with intent to sell by a person who is not drug-dependent. For purposes of its analysis of the defendant's claim, our Supreme Court expressly presumed "that the basis of the jury's verdict" on the latter offense was *Pinkerton* liability. Id., 43 n.10. The court then concluded that the defendant's claim "that application of [*Pinkerton* liability] . . . violates his federal double jeopardy right . . . not to be punished twice for the same offense in the same trial" was "without merit." (Citation omitted.) Id., 52. In so doing, the court expressly relied on both *Pinkerton* v. *United States*, supra, 328 U.S. 643, and *United States* v. *Cerone*, supra, 830 F.2d 944, which it described as "well established double jeopardy law," and rejected the defendant's double jeopardy challenge. *State* v. *Walton*, supra, 53–54.

In light of the foregoing, we conclude that the double jeopardy claim advanced by the defendant is untenable. The court, therefore, properly denied in part the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] See *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946); see also *State* v. *Walton*, 227 Conn. 32, 45–46, 630 A.2d 990 (1993) (adopting *Pinkerton* doctrine as matter of state law). Commonly referred to as a theory of vicarious liability; see, e.g., *State* v. *Apodaca*, 303 Conn. 378, 391, 33 A.3d 224 (2012); the *Pinkerton* doctrine holds that "a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy. . . . The rationale for the principle is that, when the conspirator [has] played a necessary part in setting in motion a discrete course of criminal conduct, he should be held responsible, within appropriate limits, for the crimes committed as a natural and probable result of that course of conduct." (Internal quotation marks omitted.) *State* v. *Coward*, 292 Conn. 296, 307–308, 972 A.2d 691 (2009).

[2] In returning its verdict, the jury completed a special verdict form. That form indicates that the jury found the defendant guilty of both sexual assault

in the first degree and assault in the first degree "by way of *Pinkerton* vicarious liability."

[3] The court sentenced the defendant to a term of twenty years on the count of conspiracy to commit kidnapping in the first degree count, which sentence was to run concurrently with a twenty-five year sentence on the count of kidnapping in the first degree. The court imposed a sentence of ten years of incarceration on the count of sexual assault in the first degree and two years of incarceration on the count of criminal possession of a firearm, both of which were to run consecutive to the twenty-five year sentence for kidnapping in the first degree. The court also sentenced the defendant to twenty year terms of incarceration on both the count of attempt to commit murder and the count of assault in the first degree, which the court ordered to run concurrently with each other, but consecutively to the defendant's other sentences.

[4] Practice Book § 43-22 provides that "[t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[5] Apart from the September 30, 2016 memorandum of law filed by his defense counsel, the defendant, on December 22, 2016, filed a document he prepared, titled "Defendant's Amended Memorandum of Law in Support of Motion to Correct Illegal Sentence." In that filing, the defendant alleged that Hampton, his sole coconspirator, had been acquitted in a separate criminal proceeding on the charge of sexual assault in the first degree. In light of that development, the defendant argued that his own conviction for sexual assault in the first degree pursuant to the *Pinkerton* doctrine was "invalid and must be vacated." After hearing further argument from the parties at a hearing held on September 18, 2017, the court summarily rejected the defendant's claim. In this appeal, the defendant has not briefed any claim of error with respect to that determination. See *Commissioner* v. *Youth Challenge of Greater Hartford, Inc.*, 219 Conn. 657, 659 n.2, 594 A.2d 958 (1991) (deeming claims that were not briefed on appeal to be abandoned).

[6] We recognize that the defendant also invoked the protections of the Connecticut constitution in his motion to correct. Unlike its federal counterpart, our state constitution does not contain an explicit double jeopardy provision. Our Supreme Court nonetheless has held that the due process guarantees found in article first, § 8, of the Connecticut constitution embody the protection afforded under the United States constitution. See *State* v. *Michael J.*, 274 Conn. 321, 350–51, 875 A.2d 510 (2005). At the same time, we note that "this court and our Supreme Court have held that with respect to the protection against double jeopardy, the state constitution does not afford greater protection than that afforded by its federal counterpart." *State* v. *Hearl*, 182 Conn. App. 237, 271 n.28, 190 A.3d 42, cert. denied, 330 Conn. 903, 192 A.3d 425 (2018). On appeal, the defendant has not provided this court with an independent state constitutional analysis in accordance with *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), rendering any claim with respect to our state constitution abandoned. See *State* v. *Bennett*, 324 Conn. 744, 748 n.1, 155 A.3d 188 (2017).

[7] With respect to each of the three counts in question, the state alleged in its September 20, 2005 amended information that those offenses all transpired on "August 23, 2003, at approximately 5:30 a.m., in the vicinity of the Citgo Gas Station at 410 Market Street" in Hartford.

[8] In the present case, the trial court adhered to the *Braverman* rule following the jury's verdict at the defendant's criminal trial by setting aside his multiple conspiracy convictions.

[9] The defendant's reliance on *United States* v. *Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989), is misplaced. As the United States Court of Appeals for the District of Columbia Circuit plainly indicated, that case—unlike *Pinkerton*—did not involve a double jeopardy claim predicated on multiple punishments stemming from a single prosecution. Id., 1414. Rather, *Rosenberg* involved "the unique problem caused by successive prosecutions of greater and lesser-included offenses . . . ." Id. On that basis, that federal court opined that the holding of *United States* v. *Cerone*, supra, 830 F.2d 944, was "inapposite to the issue we are confronting." *United States* v. *Rosenberg*, supra, 1414.

Unlike *Rosenberg*, the present case does not concern the double jeopardy clause's protection against successive prosecutions. Rather, it concerns the imposition of multiple punishments in a single prosecution, as did both *Pinkerton* and *Cerone*.